STATE OF INDIANA, EX REL. INTERSTATE PUBLIC SERVICE COMPANY *v.* LUND ET AL.

[No. 11,482. Filed May 29, 1923. Rehearing denied October 5, 1923.]

1. PRINCIPAL AND SURETY.—*Contractor's Bond.—Alterations in Contract.—Liability of Sureties.*—Where a construction contract provides that changes may be made, the surety on the bond will not be discharged by reason of material changes made without his consent, if within such stipulation. p. 353.

2. PRINCIPAL AND SURETY.—*Contractor's Bond.—Alterations in Contract.—Release of Sureties.*—Whether a change in the work to be done under a construction contract is one contemplated by the parties, is generally a question of fact for the jury, although the evidence may be such as to permit the court to determine the fact as a matter of law in actions for release of sureties. p. 354.

3. PRINCIPAL AND SURETY.—*Contractor's Bond.—Alterations in Contract.—Release of Sureties.—Jury Questions.*—Under a contract for the construction of a poor asylum changes were made in the specifications for electrical equipment whereby equipment for generating electric current was omitted, and provision made for other equipment to be used in receiving and dis-

tributing current from an outside source, such contract providing that changes may be made but did not limit the nature, cost or extent thereof, whether such change was contemplated by the parties, so as not to relieve the sureties from liability by reason of not having consented to such change, *held* for the jury. p. 354.

4. PRINCIPAL AND SURETY.—*Contractor's Bond.—Alterations.— Release of Sureties.—Statutes.*—Sureties on a county building contractor's bond given in compliance with statute (§5897 Burns 1914, Acts 1907 p. 580) are not released from liability for debts incurred by the contractor in prosecuting the work because the parties to the contract failed to observe the formalities provided in contract with reference to making changes in the specifications. p. 355.

5. PRINCIPAL AND SURETY.—*Contractor's Bond.—Contract.—Materialmen.—Liability of Surety.—Right of Action.—Statutes.*— A bond given for the building of a county building in pursuance to the statute (§5897 Burns 1914, Acts 1907 p. 580) is a statutory bond, and by the failure of the contractor to pay indebtedness for labor and material, *held,* a right of action against the sureties exists therefor, which cannot be defeated by any act done, or omitted, by the parties to the construction contract. p. 356.

6. COUNTIES.—*Contracts.—Bond.—Subcontractors.—Liability of Sureties.— Labor and Material Furnished.—* Under a county building contractor's bond guaranteeing prompt payment of all debts incurred by the contractor in the prosecution of the work "including labor and material furnished, and for boarding the laborers thereon," *held,* a subcontractor may recover on the bond for labor and material furnished since the quoted clause does not place a limitation on the preceding clause. p. 357.

From Lake Circuit Court; *Virgil S. Reiter,* Judge.

Action by the State of Indiana, on relation of the Interstate Public Service Company, against Erick Lund and others. From a judgment rendered, the relator appeals. *Reversed* as to all defendants except Lund, as to him *affirmed,* with instruction.

*Ibach, Gavit, Stinson & Gavit* and *George Voigt,* for appellant.

*Fred C. Crumpacker, Wm. J. McAleer, Edwin H. Friedrich* and *Frank L. Greenwald,* for appellees.

BATMAN, J.—This is an action by appellant on a bond, executed by appellee Lund as principal, and appellees Eder, Thompson, Schneider, Friedrich and one Peter Crumpacker, as sureties, to the State of Indiana, to recover for labor and material used in the construction of a poor asylum in Lake county, Indiana. Subsequent to the filing of the complaint, and prior to the rendition of the judgment, the said Peter Crumpacker died, and William C. Paxton, as executor of his last will, was substituted as a party defendant. After the formation of issues the cause was submitted to a jury for trial, resulting in a directed verdict in favor of the sureties on the bond, and a separate verdict against the principal therein. After judgment on the verdicts, appellant filed a motion for a new trial, which was overruled, and this appeal followed.

The only alleged error which we need consider, in making a disposition of this appeal, is the action of the court in overruling appellant's motion for a new trial. The undisputed evidence establishes the following facts pertinent to the questions submitted for our determination. The bond in suit, after formal recitals, reads as follows:

"The conditions of the above obligation are such that whereas, the Board of Commissioners of Lake County, Indiana, is about to let a contract for the erection of a Poor Asylum * * * and the above named Erick Lund has filed a bid for said work with the Auditor of the County: Now, therefore, if the said Board of Commissioners shall award him the contract for said work, and the said Erick Lund shall promptly enter into a contract with said Board of Commissioners for said work, and shall well and faithfully do and perform the same in all respects according to the plans and specifications adopted by the Board of Commissioners and according to the time, terms and conditions specified in said contract to be entered into, and shall promptly pay all debts incurred by him in the

prosecution of said work, including labor, materials furnished, and for boarding the laborers thereon, then this obligation shall be void; otherwise to remain in full force, virtue and effect."

The bid of said Lund for the erection of said Poor Asylum was accepted, and thereafter he entered into a contract with the board of commissioners of said county, whereby he agreed to furnish all the labor and material necessary for the construction of said building, and to construct the same according to certain plans and specifications, and under certain supervision, for the sum of $141,275.

The following appears as the fourth paragraph of said contract:

"Should the party of the first part at any time during the progress of the work require any additions or omissions from this contract, or to make any change in the plan or style of work or material to be used, the work will be done and performed and the material furnished by the said party of the second part, the value of said changes being first agreed upon in writing, and a subsidiary contract endorsed on or attached to this contract, so that the amount may be added to or deducted from the aggregate amount of this contract according as it may increase or diminish the total cost of said work and materials."

There is due appellant from said Lund a substantial sum for labor and material used in constructing said poor asylum, as finally completed. After the execution of said contract and bond, changes were made in the electrical specifications, whereby certain equipment, intended for the generation of electrical current on the premises, was omitted, and provision was made for other equipment to be used in receiving and distributing such current from an outside source. This equipment was installed in accordance with the changed specifications at an additional cost approximating $2,500. The

cost of such changes was not first agreed upon in writing, and a subsidiary contract therefor endorsed on said original contract, or attached thereto, as provided in said paragraph four thereof, as quoted above. The cost of such changes, however, was determined by the architects in charge of the construction of said poor asylum, and the amount thereof certified by them to the board of commissioners in writing. Such cost was thereupon duly allowed and paid to appellee, Lund, the general contractor.

Appellant contends that the court erred in directing a verdict in favor of appellees, who were sureties on the bond in suit. It is apparent that this contention must be sustained, unless such sureties are released from the bond, as they contend. The claim of such release is based on two grounds, viz.: (1) That a material change was made in the building constructed under said contract, without the consent of the sureties on the bond; (2) that said change was made without complying with the formalities specified in the contract.

Directing our attention to the first ground stated, we find the general rule to be that, in the absence of a stipulation permitting the parties to the contract to 1. make changes in the work to be done, a material alteration made without the consent of the surety on the contractor's bond, will discharge such surety, but if the contract under which the work is to be done provides that changes therein may be made, the surety on the contractor's bond will not be discharged by reason of material changes made without his consent, where such changes are within the stipulation of the contract in that regard. 9 C. J. 858; *Young* v. *Young* (1899), 21 Ind. App. 509, 52 N. E. 776; *American Surety Co.* v. *Lauber* (1899), 22 Ind. App. 326, 53 N. E. 793; *Higgins* v. *Quigley* (1899), 23 Ind. App. 348,

54 N. E. 136; *Hedrick* v. *Robbins* (1903), 30 Ind. App. 595, 66 N. E. 704; *Woodruff* v. *Schultz* (1908), 155 Mich. 11, 118 N. W. 579, 16 Ann. Cas. 346 and note; *Hustace* v. *Davis* (1917), 23 Hawaii 606.

In the instant case it will be observed that the contract, while providing that changes in the work may be made, does not limit the nature, cost or extent thereof. In view of this fact, we are compelled to hold that the parties intended that any reasonable change in the work might be made. Such change, however, could not be of such a character as to substitute a substantially different structure from the one shown by the plans and specifications. Whether or not a change in the work in a given case is one contemplated by the parties, as a rule, constitutes a question of fact for the jury under proper instructions, where one is called for the trial of the cause, although the evidence may be such as to permit the court to determine the fact as a matter of law. 9 C. J. 861; *Hustace* v. *Davis, supra; Hinton* v. *Stanton* (1914), 112 Ark. 207, 165 S. W. 299. We therefore hold that the first ground stated by appellees, in support of their claim of release from the bond in suit, did not warrant a directed verdict in their favor.

Directing our attention to the second ground on which appellees base their claim stated above, we note the following statutory provisions relating to the duties of county commissioners: "No bid for the building or repairing of any court house, jail, poor asylum, bridge or other county building or work or supplies shall be received or entertained by the board of commissioners of any county in this state unless such bid shall be accompanied * * * by a good and sufficient bond, equal to the amount of the bid, made payable to the State of Indiana, signed by at least two freehold sureties, residents of the county in which said building,

bridge, monument or other county work is located, or by a properly authorized and qualified bonding or surety company; which bond shall guarantee the faithful performance and execution of the work so bid for, in case the same is awarded to said bidder, and that the contractor so receiving such contract shall promptly pay all debts incurred by him in the prosecution of such work, including labor, materials furnished, and for boarding the laborers thereon. * * *" §5897 Burns 1914, Acts 1907 p. 580.

The bond in suit was manifestly given in compliance with this section of the statute, and, therefore, must be considered as a statutory bond. It has been

4. held that where a surety executes a bond of this character, he is bound to the extent provided by the statute, in pursuance of which it is executed, regardless of any restrictive provision inserted therein to the contrary. *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B 984; *Southern Surety Co.* v. *Kinney* (1920), 74 Ind. App. 205, 127 N. E. 575. In the instant case appellees do not rely upon any restrictive provision in the bond, but upon such a provision in the contract, as set out in the concluding portion of said paragraph four, quoted above. But it is clear that if appellees could not take advantage of a restrictive provision in the bond itself, contrary to the statute requiring its execution, they cannot take advantage of such a provision in the contract, as against a creditor, seeking to enforce a liability against them, by reason of a debt incurred by the contractor in prosecuting the work. It follows that appellees are not released from the bond in suit, merely because the parties to the contract failed to observe the formalities provided in said paragraph four, with reference to making changes in the work.

There is still another reason for holding that a fail-

State, ex rel., v. Lund—80 Ind. App. 349.

ure to observe the formalities under consideration did
not work a discharge of the sureties on the bond,

5. to which we will now direct our attention. It
should be observed that the bond in suit was exe-
cuted for two distinct purposes, viz.: (1) To secure
the faithful performance of the contract; (2) to secure
prompt payment by the contractor of all debts incurred
in the prosecution of the work. The first of said pur-
poses was in the interest of the board of commission-
ers, and the second was in the interest of those furnish-
ing labor and material, and board to the laborers. With
the accomplishment of the first of said purposes, the
laborers and materialmen were not concerned, and the
same may be said of the board of commissioners with
reference to the second of said purposes, as any indebt-
edness incurred by the contractor in prosecuting the
work could not become a lien on the building. If the
contractor failed to pay such indebtedness, a right of
action on the bond existed therefor, which could not
be defeated by any act done, or omitted, by the parties
to the construction contract. *Dewey* v. *State, ex rel.*
(1883), 91 Ind. 173; *Conn* v. *State, ex rel.* (1890), 125
Ind. 514, 25 N. E. 443; *Aetna, etc., Co.* v. *Indianapolis,
etc., Co.* (1912), 178 Ind. 70, 98 N. E. 706; *Fry* v. *Ban-
non, etc., Co.* (1913), 179 Ind. 309, 101 N. E. 10; *U. S.
Fidelity, etc., Co.* v. *American, etc., Co.* (1908), 41 Ind.
App. 620, 84 N. E. 555; *Snider* v. *Greer-Wilkinson Lum-
ber Co.* (1912), 51 Ind. App. 348, 96 N. E. 960; *Vic-
toria Lumber Co.* v. *Wells* (1916), 139 La. 500, 71 So.
781, L. R. A. 1916E 1110, Ann. Cas. 1917E 1083; *As-
phalt Co.* v. *Building Co.* (1917), 99 Kans. 567, 162
Pac. 299, L. R. A. 1917C 490; *Surety Co.* v. *McMillan*
(1914), 234 U. S. 448, 34 Sup. Ct. 803, 58 L. Ed. 1394.
It follows that in an action on a bond, like the one in
suit, by a creditor of a contractor, to recover the amount
of an indebtedness incurred by him in the construction

of a building, it is not encumbent upon such creditor to show that none of the requirements of the construction contract have been waived by the parties thereto, but, on the contrary have been strictly observed. On the other hand, it suffices in this regard if it be shown, that the indebtedness sued upon was incurred in the prosecution of the work covered by the construction contract, which would include any changes made within the contemplation of the parties, as provided by the terms thereof. Such a showing would suffice even if it should appear, as it does in the instant case, that some formality with reference to changes in the work, made for the benefit of the parties to such contract, had been waived. For the reasons stated we conclude that the second ground stated by appellees, in support of their claim of release from the bond in suit, did not warrant a directed verdict in their favor.

Appellees finally contend that appellant's status in this action is that of a subcontractor, and hence it has no right to recover on the bond in suit. They 6. base this contention on a claim that the bond only secures the indebtedness, incurred by the contractor, in the prosecution of the work, for labor and material, and the board of laborers, and hence any amount due a subcontractor is not included. This claim cannot be sustained. It will be observed that the bond provides for the prompt payment of *all debts incurred by the contractor in the prosecution of the work*, "including labor, materials furnished, and for boarding the laborers thereon." In the case of *Title Guaranty, etc., Co.* v. *State, ex rel.* (1915), 61 Ind. App. 268, 109 N. E. 237, this court had under consideration a bond identical with the one in suit, in so far as it related to the payment of debts incurred by the contractor in the prosecution of the work involved, and there held that the clause quoted above did not have the effect of plac-

ing a limitation on the preceding clause, which we have italicised. In passing upon this question the court said, among other things: "The purpose as expressed by the bond is to secure the payment of debts incurred in the prosecution of the work. Among such debts are those growing out of labor performed and material furnished. But if there are other debts, regardless of their nature or origin, that sustain such an intimate, immediate and exclusive relation to the building of the road that it may be said that such debts were incurred in the prosecution of that work, they too are covered by the provisions of the bond literally interpreted." The undisputed evidence shows that the indebtedness on which this action is based, was incurred by the contractor in the prosecution of the work in question, and therefore clearly falls within the provisions of the bond, under the construction by this court of a like provision, as indicated above, to which we expressly adhere. The citation of authorities seems to be unnecessary, but we cite the following on the rights of subcontractors generally, under bonds with varying provisions. 6 Cyc 83; 27 Cyc 314; *Ochs* v. *M. J. Carnahan Co.* (1906), 42 Ind. App. 157, 76 N. E. 788, 80 N. E. 163; *Lumber Co.* v. *Peterson & Sampson* (1904), 124 Iowa 599, 100 N. W. 550; *Fitzgerald* v. *McClay* (1896), 47 Nebr. 816, 66 N. W. 828.

We do not consider other questions presented by appellant, as we do not deem them essential to a proper determination of this appeal, nor do we consider appellees' contention that the court erred in overruling their demurrers to the complaint, as they have not assigned cross-errors. For the reasons stated, we hold that the evidence did not warrant the trial court in directing a verdict in favor of appellees, and hence there was error in overruling appellant's motion for a new trial. Judgment reversed as to all appellees, other

than Erick Lund, against whom the judgment is affirmed, with instructions to sustain appellant's motion for a new trial as to said appellees, and for further proceedings consistent with this opinion.